[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 146.]

CLEVELAND BAR ASSOCIATION *v.* JOHNSON.

[Cite as *Cleveland Bar Assn. v. Johnson*, 1998-Ohio-527.]

*Attorneys at law—Misconduct—Permanent disbarment—Violating a Disciplinary Rule—Engaging in conduct involving dishonesty, deceit, fraud, or misrepresentation—Neglect of an entrusted legal matter— Failing to carry out employment contract—Causing prejudice to client in course of professional relationship—Failing to promptly pay or deliver, on request, client funds or property to which client was entitled—Neglect or refusal to assist in disciplinary investigation—Indefinite suspension recently imposed in separate case.*

(No. 98-1239–Submitted August 19, 1998–Decided December 2, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-78.

———————————

{¶ 1} On August 11, 1997, relator, Cleveland Bar Association, filed a complaint alleging that respondent, Mitchell L. Johnson, formerly of Mayfield Heights, Ohio (last known address Chicago, Illinois), Attorney Registration No. 0058430, violated six Disciplinary Rules and two Rules for the Government of the Bar. When Johnson failed to file an answer or otherwise plead to the complaint, relator filed a motion for default. The matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} Relator's complaint stemmed from Johnson's representation of Wesley Chrapko, who hired Johnson to file an employment-discrimination action on his behalf. Chrapko paid Johnson a $1,500 retainer and agreed to pay him $105 per hour. If the action was successful, Johnson was to receive one-third of any recovery, less any hourly fees already paid. Johnson filed the action in the Court

of Common Pleas of Medina County; the action was subsequently removed to the United States District Court for the Northern District of Ohio.

{¶ 3} In October 1995, Johnson told Chrapko that he needed $1,000 to retain an economist as an expert witness on the issue of damages. Chrapko wrote a check in that amount, payable to Johnson. Although Johnson negotiated the check, he did not retain, or even discuss the case with, any such expert. Chrapko later asked for his money back, but Johnson did not return it.

{¶ 4} As the action proceeded in the federal court, Johnson repeatedly failed to provide discovery as required by Fed.R.Civ.P. 26. He also failed to attend a scheduled status conference and Chrapko's deposition. When the defendants filed a motion for summary judgment, Johnson failed to file a timely brief opposing the motion, and failed to request an extension until two weeks after his brief was due. The federal court granted summary judgment as to Chrapko's federal claims and remanded his state-law claim to the common pleas court. Eight days *after* the federal court granted partial summary judgment, Johnson filed a brief opposing summary judgment. Johnson never informed Chrapko what the federal court had done with his case.

{¶ 5} During Johnson's representation of Chrapko, Chrapko filed for personal bankruptcy. The trustee in bankruptcy informed Johnson that Chrapko could no longer honor his agreement with Johnson for hourly fees, and could pay for Johnson's services only on a strict contingency basis. Johnson agreed to modify his fee agreement with Chrapko accordingly. Yet, despite this, Johnson later demanded an additional $1,000 from Chrapko. Johnson told Chrapko that "there were ways around the bankruptcy," and instructed Chrapko to have a third party issue a check to Johnson on his behalf. Chrapko complied with Johnson's demand, fearing that Johnson would not otherwise pursue his lawsuit.

{¶ 6} On August 29, 1996, Chrapko finally fired Johnson. Chrapko asked that Johnson turn over his file and return the $1,000 paid to retain an expert witness.

2

Johnson did not turn over Chrapko's file. This prejudiced Chrapko's ability to pursue his lawsuit. Moreover, Johnson neither refunded any of Chrapko's money nor provided an invoice detailing the time spent on the case.

{¶ 7} Finally, after Chrapko filed a grievance with relator, relator sent two letters to Johnson concerning the matter. Johnson never replied.

{¶ 8} On June 11, 1997, having ascertained Johnson's office address, relator served a Notice of Intent and a draft copy of the complaint on Johnson at his office by certified mail. A copy of the receipt is in the record. On August 11, 1997, relator filed its complaint with the board. The board served a copy of the complaint upon respondent by certified mail. A copy of that receipt is also in the record. The board issued a Notice of Formal Hearing, but this was not successfully served upon Johnson. Accordingly, a copy was served upon the Clerk of this court pursuant to Gov.Bar R. V(11)(B).

{¶ 9} On October 6, 1997, relator wrote Johnson to inform him of relator's intent to file a motion for default. Relator sent copies of this letter to Johnson's business and home addresses by both certified and regular mail. The letter sent by regular mail to Johnson's home was apparently received, as it (unlike the other three copies) was not returned to relator.

{¶ 10} On December 23, 1997, relator filed its default motion. On February 19, 1998, Johnson wrote to relator, providing his mailing address in Chicago. After this, Johnson orally contacted the chairman of the panel and requested an opportunity to explain why a hearing should be held on the default motion. The chairman granted Johnson's request and ordered that he explain by March 6, 1998, why he failed to answer the complaint and the default motion, and why he failed to inform this court of any change in his address. However, Johnson filed nothing and offered no explanations.

{¶ 11} Based on the facts alleged in relator's unanswered complaint, the panel concluded that Johnson had violated DR 1-102(A)(1) (violating a

Disciplinary Rule), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6-101(A)(3) (neglect of an entrusted legal matter), 7-101(A)(2) (failing to carry out an employment contract), 7-101(A)(3) (causing prejudice to client in course of professional relationship), and 9-102(B)(4) (failing to promptly pay or deliver, on request, client funds or property to which client was entitled). The panel also found that Johnson had violated Gov.Bar R. V(4)(G) (neglect or refusal to assist disciplinary investigation) and V(6)(A)(1) (attorney misconduct). The panel recommended that Johnson be permanently disbarred. The board adopted the panel's findings, conclusions, and recommendation.

————————————

*Joseph G. Schneider* and *Erica L. Eversman*, for relator.

————————————

*Per Curiam*.

{¶ 12} We find that Johnson has received adequate notice and the opportunity to plead or respond to the complaint and to participate in the proceedings against him. We further note that recently, in a separate case, we indefinitely suspended Johnson for neglect of entrusted legal matters and failure to assist in an investigation. *Cleveland Bar Assn. v. Johnson* (1998), 81 Ohio St.3d 74, 689 N.E.2d 537. Given the undisputed facts in this case, we agree with the board that disbarment is appropriate.

{¶ 13} We therefore adopt the findings, conclusions, and recommendations of the board. We hereby permanently disbar Mitchell L. Johnson from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————